Our next case for argument is 24-1089, Lyft v. Quartz Auto. Mr. Rosen, please proceed. Good morning, Your Honors, and may please support Michael Rosen for the Defendant and Appellant Quartz Auto Technologies LLC. I'd like to reserve five minutes for rebuttal, if I could. And Your Honors, for both of the patents at issue here, this is a classic instance of the district court improperly importing limitations from the specification into the claims. And I could start with the 871 patent here. And the claim term at issue here is defective operational conditions in said automobile. Now, the claim term itself does not necessarily, in any way, imply any sort of limitation to any type of repair in a repair shop or a maintenance shop. And in fact, we agree with at least one part of what the district court held at Appendix 24, where the court said the claims are broad and their language does not place any limit on the claim term, meaning the claims themselves encompass a wide range of potential embodiments and are not limited to typical problems that would be repaired in a repair shop. These could include the loss of traction on icy roads, could include windows that aren't properly defrosted, could include a vehicle stopped in the middle of the road. These are all defective conditions. You wouldn't take your car to a garage, typically, to address. The written description seems to talk heavily about the kinds of defects that need to go into a repair shop. But then the idea here, the invention is, let's see if we can head off those repair needs right in the car and figure out if there is some kind of apparatus we can build into the car that can self-correct the car defects without needing to ever take the car into a repair shop. And so the claim reads pretty consistently with that, where you have all these sensors in the car, sensing various parameters, sending that data to some remote diagnostic station, and then the diagnostic station sending information back to the automobile as to what the defective operating condition is in said car. And just right there, the language of the claim itself, it seems like at least it's reasonable to read that as being based on car defects themselves. And that is one example, Judge Fenn, that is certainly an example that is mentioned in the specification. And part of, as Your Honor said, part of the purpose of the invention is to head off the need to fix or redress any sort of defective condition. To send the car to the repair shop. That seems to be the thrust of the written description. You might say it's an example. I read the spec a little differently. It seems to be leaning pretty hard in that exclusive direction. I understand your point about bad weather and things like this. Well, that's right, Your Honor. There certainly are examples of that, where there would be types of conditions or defects that would be repaired in a repair shop. But there are many others as well. And just one example that's listed is throughout our briefs at column 5, lines 9 through 21. There the issue is diminished traction, which can come up in conjunction with wet weather conditions. Now, if you have diminished traction in your vehicle because of conditions on the road, that's not something you would take your car in to be repaired for. It's anything that would be something that could be, in the spirit of this invention, redressed. There's a way to read this passage in column 5 about the diminished traction being the sensed defect. And then separate and apart from that sensed defect is the fact that the diagnostic station additionally learns that there's bad weather conditions and then can combine those two things to send a warning to the driver about dangerous driving conditions. But the dangerous driving conditions term could be read to be something different from the way this passage uses defective operating conditions. There's first the defective operating conditions. That's based on the data that was sensed by the sensors. Then there's the dangerous driving conditions, which is based either on that sensed data by itself or the sensed data in combination with other separate data. The point is that your dangerous driving condition example in the patent isn't necessarily the same thing, the same species, as the defective operating conditions. Well, we would submit, Your Honor, that the dangerous aspect of these conditions is a subset of a defective condition. That, I think, is clear throughout. Right. My point is it very well could be that it's a separate species. It's not a subset. Well, we would submit respectfully, Your Honor, as we did in our briefing, that column two, lines 28 through 35 makes clear in the specification that dangerous is a subset. And taken together, this example of the diminished traction would clearly be, in our view, and I think in any reasonable view, a defective operating condition of the vehicle that would not necessarily need to be redressed or fixed in a repair shop. In fact, it wouldn't make any sense to do that. This would be redressed on the spot. And if I might move to the 215 patent just to stay on track here, this is the patent involving the terms alert and event. And here, too, courts contends that both the claim language and the specifications support a broad construction and that the district court improperly limited the scope of the claims. Now, once again, we agree partially with the district court on appendix 28. It held that nothing in the language of the asserted claims requires an alert to indicate a problem with or in an IT device. That's absolutely right. Have you read the abstract of the 215? I have, Your Honor. It's short, but the one message of the short abstract is it really quite tightly treats these terms IT problems, problems, alerts, events as all interchangeable thoughts. And then once you get there, we have a principle in claim construction that when terms are being used interchangeably, then you can understand the claim terms in the same way that as meaning the same thing as those other terms. So if the claim says events and alerts, we can understand that to also be about problems with the IT device itself if the spec, clearly enough, treats these terms as interchangeable. And again, Your Honor, we agree with the principle. We agree that there are certainly examples, including in the abstract, where those terms may be used interchangeably. There's other examples in the spec, of course. Exactly. And that's what we would direct the court to, that throughout the spec, it's several occasions. Well, you wouldn't want to direct me to those examples. Those examples hurt your case. No, I'm sorry. The examples, on the contrary, examples where there are alerts and events that are discussed, not limited, not described as problems or fault conditions in or with a device. And specifically, as throughout our briefing, column two, lines 13 to 21, another aspect of the present invention is a method of managing an information technology device, one embodiment of which comprises receiving an alert, et cetera, et cetera, with no reference whatsoever to problems or fault conditions. We would also point the court to column four, lines 49 through 60 in figure three, which also describe this in a different way from faults and fault conditions and problems. And this is not what the district court point to is not, in our view, a consistent or a uniform use of alert or event to mean a problem condition. And in fact, in its red brief, Lyft cites some of the portions that I just cited to your honors that support, actually, courts' position. And I'll just note that the district court, in its justification for its ruling at appendix 30 in the conclusion of this section, stated it's basing its ruling on the fact that no embodiment contemplates an alert unrelated to the management of an IT device. And we don't disagree with that. That may well be true, but that doesn't mean that the claim should be restricted not just to a management of an IT device, but to a fault or a condition or a problem in or with an IT device. My understanding of the patent was the point of this is to try to find some IT expert to help with a problem with your IT device. And sometimes it can be hard to timely find IT help or the right specific kind of IT expert. What is it that you're looking to try to get these claims to encompass? Just curious, outside of that context of trying to find IT helper man. We would accept your honor's premise, Judge Chen, of IT help to address an alert or an event. We wouldn't define it necessarily as a problem. I'm just trying to understand what are you trying to encompass beyond what I just described. Of course. So for instance, there could be, let's say, someone writes into IT because they need additional resources for their computer. They need a link to complete the cybersecurity training. They need someone to point them in that direction. Or it could be, oh, I heard there's an outage in Xfinity or Verizon right now. Is that maybe affecting the network? Could be any number of different issues for alerts or events that you would need an IT professional to address that isn't necessarily a problem with or in a managed IT device. That's the key issue here, your honors. And with that, maybe I'll reserve for rebuttal. Very good. OK, Ms. Dreyer. Good morning, your honors. And may it please the court. As Courses Council has made clear during its opening argument, courts seeks a construction here for all three terms that issue that is broader than anything the applicant could have ever intended to have invented. The district court was correct in issuing its three constructions, all of which comport with how the applicant repeatedly described its invention in the specification. Turning first to the 871 patent, the district court rightly resolved the dispute presented by the parties as to whether the defective operational condition of the automobile could be something that is completely unrelated to the vehicle, such as the driver's attentiveness, the passenger behavior, things that don't actually affect how the vehicle itself is operating. That's the only issue that you think we need to resolve in order to find it in your favor here on this claim term. Because I love the court's construction, right? I agree with you on this point that you're making. I think there's a distinction between passenger issues and car issues. And I think that this patent is addressing car issues, not passenger issues. But the district court's incorporation of addressed at a diagnostic and repair center seemed like a strange addition to its construction. I think there could have been different ways to resolve the dispute. And this isn't a construction that was presented by either party. So it really crystallized in the briefing presented to the court. And then at the Markham hearing, when the courts' counsel was describing how a crying baby could throw something in the vehicle, and then a driver would swerve. And that helped crystallize the dispute. And the court came up with this construction on its own. It wasn't advocated by the parties. There may be another way to reach the thrust of the same construction, or at least resolve the dispute in the same way. Couldn't we simply construe it as an operational condition of the vehicle, as opposed to a passenger in the vehicle? I don't know that that would give enough specificity to resolve how courts is reading these claims on the accused products. They're reading the claims, and this is reflected in the record, Your Honor, and around Appendix 365, 366. They're reading it on an application on a phone, and whether a driver is far away from the destination that he was intended to be at. And so that might relate to the vehicle. It might be of the automobile. But nothing's wrong with the vehicle in that scenario. And that's really what the court was asking below. The argument that was presented with is the driver swerves, but the car is fine. And courts admitted in the Markman hearing below, yes, when the driver swerves, so the car is moving across that line, but the car is otherwise fine. That's embodied within the scope of this invention. And we would disagree. That might be of the automobile, but nothing is wrong with the vehicle. That's bad driving. But how is that an operational condition of the automobile, though? I mean, that's not, I don't, you're right. I guess I see a difference between operator and vehicle. As do we, Your Honor. And I'm just figuring out how to give, how to give, how to put that in the right words. Yes, yes, Your Honor. I just don't, I just didn't love the address to the diagnostic and repair center. I mean, you danced carefully around the idea that says, well, it says address. It doesn't say they have to actually repair it. Because you're saddled with this claim of construction, which wasn't exactly, I think you said no construction, right? Plain ordinary meaning. Oh, we didn't, Your Honor. We proposed a construction, two alternative constructions. But the court, in narrowing the dispute about whether it had to be of the automobile or in the automobile, that's the crux of what the court was trying to resolve. So would something like an automobile-based defect not be clear enough? I think using the word defect or fault is consistent with the specification and would provide the type of clarity that the district court here was trying to give to the construction. That's supported by column one, lines 52 through 54, where it talks about the automobile's mechanical, physical, or electrical systems. So something that reflects that it's defects or faults with those parts of the automobile, and not something that reflects where the automobile is completely fine. It operates completely normally, but there's bad driving behavior.  Yeah, user error. What do you think is the best intrinsic evidence support for the district court's construction? And also, do you think the present invention language in this particular patent supports up that construction? Yes, Your Honor. To answer the second part of your question, yes. The present invention language is used repeatedly in this specification and lends support to the district court's construction. I would say the best examples in the specification would be reflected at column one, lines 32 through 33, where it refers to the present invention. And then it refers to continuous monitoring and correction of automobile operating systems, as well as column four, lines 60 through 63. It talks there about the sensed parameters are diagnosed by the computer. And then it goes on to say to thereby adjust simple, defective automobile operating conditions within the automobile. And so there, it's supporting the district court's construction that these are defects that are sensed, as we know from element 1A of the claim. They're relating to the operation of the automobile itself and not to other conditions. And it supports the court's construction. When you say operation of the automobile itself, that's just where the language starts getting a little One way of understanding that is how the car is being operated by the driver, by the user, or by occupants in the car, versus something that's more just intrinsic about the status of the car itself and whether that car by itself, regardless of a user or any occupant, has a problem. And so I think that's the point you're trying to capture. I think that's the point the district court's trying to capture. And I think if we were to try to adopt the thrust of that but aren't completely satisfied with the district court's conception of this thought, I think we're struggling a little bit to try to figure out what would be the different language. Yes, Your Honor, I understand. Adopting a construction that distinguishes between bad driving behavior or user operation when the car is otherwise fine. And the reason why I doubled down on that language, Your Honor, is that's the language that courts agreed to in the Markman hearing. When the court asked, it is the operation of the vehicle itself that's defective. That's what you're talking about. The car is fine. That's at Appendix 3957. And the court says, yes, that's what we're talking about here. So the construction has to embody how the applicant here described its invention as being something about the automobile operating. And I think that that's, again, that's reflected where it talks about the mechanical, physical, or electrical parts of the automobile itself. I think that's where you get to that it's the, that clarifies the operational language that I think the court is struggling with. It's otherwise defined in the summary of the present invention as within the automobile operations or the automobile operating conditions or system. Reading the claims in light of the specification, it becomes clear that that's what the applicant intended to invent, is when something's wrong with the car. The claim doesn't call for this particular limitation. But the patent specification talks about the idea about once a defective operating condition is determined, that the car has some kind of apparatus that fixes the operating condition. I'm just trying to understand, what would that look like? What kind of apparatus could do that? My brakes are faulty. There's no apparatus that I know of that you could stick into a car that then just goes down into the brakes and starts fixing the brakes. Right. There may not be an apparatus that would fix that problem, at least not in modern times, Your Honor. But the specification does describe that the types of problems that may be adjusted have things to do with valves and gauges. That's at column three, lines 21 through 22. It also might reflect things that have to do with emissions. And so I could envision a situation that a person of ordinary skill in the art would understand that there may be sensors or, as one of the dependent claims says, embedded microprocessors that could make adjustments to correct for any number of things that may be happening that's wrong with the vehicle itself. I think that would be embodied by the scope of the claims. But there may be instances, and this is described in the specification, where the apparatus can't address the type of thing that would normally be addressed by a diagnostic and repair shop. It can't be done remotely. And so in that instance, you still might have to take it into the repair shop. But at least there's the thrust of the invention is a two-way communication system between the vehicle and that repair shop so that these things can be facilitated, detected automatically, adjusted remotely if you can, or referred to the operator to bring it into the vehicle. And another example is it talks about in that situation, it might flash a light to the user if it can't bring it into the vehicle. Could I ask you to move to the event language in the 215 patent? Yes. So turning to the 215 patent, Quartz's proposed construction of an alert and event simply deprives the claims of any meaning other than the word notice. Quartz wants event to be the thing that triggers the notice, and alert to be that notice that was triggered by the event. And they collapse in on one another, and then all the claim then requires is a notice. And a notice about anything, as long as it was sent from a managed IT device, according to Quartz's reading, would be encompassed by the scope of the claim. That's simply not what the applicant here intended to invent. Conventional IT management systems, which are described in the specification of the 215 patent, they sent notices. They had email communication systems. The patent has that one paragraph in the summary of the invention that your opposing counsel cited to that describes an embodiment that's not restricted on its face to anything about problems or IT problems. It just talks more broadly and simply about events and alerts. I agree with you. Events and alerts, they seem to be very interrelated, to maybe even be just referring to the same thing. But nevertheless, that passage is not constrained to problems or IT problems. And so can you speak to that? I have two responses to that. I do think that that passage is limited to IT problems for two reasons. The first is the passage just repeats the claim language. So giving it any further, or trying to determine any further meaning from it on its face alone in isolation is difficult. But that passage begins on line 13 with another aspect of the present invention. Column two, line 13. It begins another aspect of the present invention. That present invention language is preceded by the summary of the invention, which is the bottom of column one. And the bottom of column one, the summary of the invention, says the present invention provides a method of improving response time to IT problems and ensuring that someone will respond to a problem. And then it lists all the different embodiments that are encompassed within that present invention, including referring back to the present invention language in the embodiment in which, of course, is counsel identified in column two. So it's preceded by that language. That language is used repeatedly. It's repeated verbatim in the abstract. The abstract refers to, am I correctly understanding your argument as follows? The summary of the invention begins by saying we're constricting our universe to IT problems. That's what this is about. Then when it talks in the next paragraph about another aspect of the present invention, we have to accept as a given that we've already constricted the world to IT problems. I think based, yes, Your Honor, based on the repeated usage in the specification and how it describes the present invention repeatedly and that there's no embodiment described in the way that courts would like it to be. That's further supported by other places in the specification where it talks about column three in the detailed description where it talks about monitoring the IT device for events and triggers indicating a problem or fault condition. That's lines 32 through 34. I'm sorry. Keep going. Sorry. I was just going to respond to your question, Judge Chen, in the opening argument about what courts envisions the event to be. Courts is, in this case below, it's reading this claim on a ride request. So when you open your phone and you open the Lyft app and you say, hey, I'd like a ride. I'd like someone to pick me up, that's what courts imagine to be the event. That's shown in appendix 385. They actually call it, in the infringement contentions below, a ride request event. And that's simply not something that the applicant here intended to invent. That's not encompassed within the scope of the claims as understood by the specification. And for that reason, we believe that the district court's construction should be affirmed. Thank you, Mr. Iyer. Thank you, Your Honor. So I'll just begin by answering the question that Judge Chen had for Lyft about where, in the specification, there is support. I'm sorry, the 871 vehicle patent, where there is a description of what can be done to redress a problem short of sending the vehicle to a repair shop. And that would be a column 5, lines 18 to 21. This, again, is in the context of the diminished traction. And there, the patent describes how the remote diagnostic center can block or otherwise limit the operation of the automobile. So there are, and in fact, in today's cars, I think there are the possibility. This patent is a lot older. But there are ways to slow down the car or to throttle the speed, let's say, of a car. That is, I think, a possibility. And what that goes to, just more broadly, Your Honors, is the notion that this defective operational condition, it doesn't matter if it's a driver behaving badly, whatever that means, or it's a baby in the car that's being distracting to the driver. The question is, the key question is the claim language, which is defective operational conditions in said automobile. Now, Counsel for Lyft described the claims as conditions of said automobile. In the spirit of President Lincoln, maybe of and in isn't necessarily the same thing. The language is defective operational conditions in said vehicle. Now, if that means that a baby throws a bottle of water, as was described and debated at the Markman hearing, and that distracts the driver so that the driver drives off into the middle of the road, that's a defective condition the minute that the driver goes off into the side of the road. And that is exactly the kind of thing that the patent would want to redress. So what if we were to modify the claim construction and say something about this is, when it talks about a defective operating condition in the car, it's talking about a defect as to the car itself? So that construction, Your Honor, in our view, would still be unwarranted and unnecessarily limiting. I'm just trying to ask, would there be any dispute that needs to be further evaluated on remand, or would we be in the same place? Well, I suppose the question could be in that situation, Your Honor, that it arguably could still read out the embodiment of the diminished traction. I understand that you maybe wouldn't want that construction. My question is a different question, which is to say, let's say what we're trying to do is essentially capture the import of the district court's claim construction, but slightly modify it in a way that we think is just a little more consistent with the overall patent, and it's expressed in the way that I just expressed it. Would there be nothing left to do but to affirm the case? That I don't think would be correct, Your Honor. I think that would change the calculus of infringement issues, potentially. I think we'd have to understand. But that's what I'm trying to figure out from you, which is, what about that construction would still make you think, aha, there's still more that could be done on remand for you, the patent owner? Oh, in that situation. Well, because then if a car is in the wrong, let's say is in the wrong location, or has not dropped off a passenger in the right spot, that could signify some problem. OK, but I guess my proposed thought bubble of the claim construction would exclude those sorts of things. Because we're talking about something that's very car-centric, about a defect inside that car, has nothing to do with how the car is being used. It has something to do with the car itself. That could be, Your Honor. I think we'd have to see exactly how the language came out to determine it. But for that reason, we would submit that that would still be unduly limiting. But if I just might, in no amount of time, if I might just briefly address the 215 in 30 seconds. We disagree with- I have a question for you on the other patent. In particular, do you agree that you raise no separate challenge for the event versus alert? That's right, Your Honor. In our view, the event and alert issues rise and fall together. There was an argument made that our construction is circular, because the event references the alert, and the alert references the event. In fact, the district court's construction, if ours is circular, then the district court's construction is equally circular, because there's the same kind of language going on there. But that's it. You say the claim is circular. I wouldn't know if I would go that far, Your Honor. But we do think that alert and event, that's not the issue. The question is whether alert and event are tied to problem or not. And just to conclude, we disagree that the present invention language limits it to IT problems, and that the embodiment listed in claim two is limited to IT problems, problems in or with an IT device. And if that's not good enough, we would also, again, direct the court to figure three in column four, lines 49 through 60, which is not part of the present invention summary. And that also is not tied to problems in or with an IT device. OK. I thank both counsel, especially for how well-prepared they both were. Thank you for that.